Argued and submitted August 21, reversed and remanded with instructions to reinstate the referee's order November 23, 1981, reconsideration denied January 14, petition for review denied February 24 (292 Or 581); petitioner's petition for reconsideration of petition for attorney fees allowed May 26 (57 Or App 561, 647 P2d 934), reconsideration denied July 15, petition for review denied September 21, 1982 (293 Or 521)

In the Matter of the Compensation of
Ole Larson, Claimant.

LARSON,
*Petitioner,*

*v.*

BROOKS-SCANLON,
*Respondent.*

(No. 79-07895, CA A20838)

636 P2d 984

Martin E. Hansen, Bend, argued the cause for petitioner. On the brief were Lyman C. Johnson and Johnson, Marceau, Karnopp & Petersen, Bend.

Margaret H. Leek Leiberan, Portland, argued the cause for respondent. With her on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a workers' compensation case in which the issue is whether claimant has shown, by a preponderance of the evidence, that his present disabling low back symptoms are an aggravation of an earlier compensable injury. The referee held that they are; the Workers' Compensation Board reversed. We reverse.

Claimant, a 55-year old logger, has an extensive history of low back trouble since at least 1967. However, he was symptom free at the time of the compensable incident on August 13, 1975, which underlies this claim. Claimant was diagnosed as having degenerative disc disease and a herniated disc. A laminectomy for the disc problem was performed. Claimant's treating physician, Dr. Miller, subsequently found claimant medically stationary with no residual problems. The claim was closed by a Determination Order on July 12, 1976, which awarded claimant compensation for temporary total disability only.

Claimant suffered another lumbosacral strain in 1977, for which he ultimately received an award of 15 percent unscheduled low back disability. Another aggravation claim in 1978 was compromised in a disputed claim settlement.

In July, 1979, claimant again saw Miller for recurrence of back and leg pain—the situation which gives rise to the present aggravation claim. He had only worked two and one-half days since June 15, 1979, because of back pain. Miller found claimant to be essentially asymptomatic by July 23, 1979, and released him for work on August 1, 1979.

The carrier denied claimant's aggravation claim on August 22, 1979. Claimant was seen by Dr. Kendrick, an associate of Miller, on August 24, 1979, because he had had another recurrence of disabling back pain and Miller was not available. Kendrick reviewed claimant's medical reports, examined claimant and concluded that claimant was suffering, and had suffered, from exacerbation directly related to his work and related to his original injury of 1975. Claimant asked for a hearing on the denial.

On June 16, 1980, claimant's aggravation claim was ordered accepted by a referee after a hearing. On

August 4, 1980, Miller sent a letter stating that claimant's symptoms were caused by his 1975 injury. Claimant's attorney mailed this letter to respondent's attorney on August 13, 1980. On December 19, 1980, claimant moved the Board to incorporate the August 4, 1980 report into the record. The Board denied the motion and reversed the referee's order on March 31, 1981. Claimant appeals.

Claimant first argues that the Board erred in denying his motion to incorporate Miller's letter into the record. We do not decide the issue because, even without Miller's clarifying letter, we find that the evidence preponderates in claimant's favor.

Among the medical opinions that the Board had before it when it made its decision were three letters from Miller and a letter from Kendrick. Brooks-Scanlon urges us to give deference to Miller's opinion because he is claimant's treating physician and to discount the opinion of Kendrick because he saw claimant only once, relatively late in the course of his ailment. It could be argued just as plausibly that Miller's opinions should be discounted, for they seem to be inconsistent with each other, while Kendrick's opinion deserves deference because it is clear and resolves the apparent inconsistency.[1] At any rate, the medical evidence must be examined.

In August, 1977, Miller reported that there was no evidence of any permanent disability from claimant's 1975 injury and that there were no abnormal findings in the claimant's back. Kendrick interpreted that conclusion in his 1979 letter:

"I think it is important to recognize that Dr. Miller's statement that he had no evidence of permanent disability

---

[1] In fact, the referee reached that conclusion:

"* * * In review of the medical evidence, Dr. Miller, the treating physician, in July 1979, stated there was no question that claimant's symptoms were related to his degenerative disc disease. This contradicts his previous opinion of March 28, 1978, wherein he remarked that claimant's recurring symptoms are a direct result of his injury. However, Dr. Kendrick's opinion is not qualified. He opined claimant was suffering from exacerbations directly related to his work and previous injury. Dr. Miller's opinion becomes suspect because of the inconsistencies. I give greater credence to Dr. Kendrick's unequivocal opinion of the relationship between claimant's present condition and his previous industrial injury." Opinion, Workers' Compensation Board, Hearings Division, June 16, 1980.

certainly does not mean that the patient was not more predisposed to further back difficulty than a person without any previous disc disease. In fact, the opposite is true and there is no question that the patient had a greater predisposition for injury, particularly given the heavy type of work that he does."

A letter from Miller on March 24, 1978, stated without reservation that the claimant's symptoms were the result of the 1975 injury. It was his later letter of July 23, 1979, which was primarily relied upon by the Board in denying compensation. It states:

"There is no question in my mind that this patient's symptoms are related to the original problem of degenerative disc disease at the L4-5 level."

That statement could mean one of two things. As interpreted by the Board and by Brooks-Scanlon, it could mean that the symptoms were *solely* the result of the pre-existing disc disease. On the other hand, it may have been referring only to the undisputed fact that the symptoms were at least *partially* caused by the disease, without eliminating the 1975 injury as an aggravating factor. The claimant's attorney made an argument to that affect in his amended brief to the Board.[2] We find the letter ambiguous and therefore give it little weight.

---

[2] In his brief, claimant's attorney stated:

"Insurer has consistently wanted to take the position that all of Mr. Larson's problems are related to degenerative disc disease and not to his injury. I would point out that Dr. Miller stated in the above quoted sentence only that his symptoms 'are related to the original problem of degenerative disc disease' and did not say that degenerative disc disease was the sole cause. I would point out also that the site of the degenerative disc disease is the L4/5 level which Dr. Miller points out in the beginning of his July 23, 1979 letter is the site where 'this patient had a wide decompressive laminectomy because of a complete block at L4/5 in October 1975.' Dr. Miller has consistently over the course of his treatment of this man related the degenerative disc problem to the site of the original injury. I would refer the Board again to Exhibit 23 which is Dr. Miller's report of March 24, 1978. That is the letter in which Dr. Miller stated that it was his opinion 'that this patient's recurring symptoms are a direct result of his injury, which he had, which precipitated his original surgery.' In that same letter Dr. Miller asked the insurer to 'see the office summary dated February 13, 1978 when I saw this patient.' That February 13, 1978, office visit note was attached to the letter. In that note the Doctor states that 'The patient obviously has had an aggravation of his existing degenerative disc disease in his back.' It is clear that the Doctor relates the injury the laminectomy and the disc disease together in treating this man's problem."

Finally, the Board had before it the letter from Dr. Kendrick that stated that he was "somewhat appalled" by the denial of the claim. He wrote:

"I think it is inconceivable that one can come to any conclusion other than the fact that the patient's back and leg pains are a result of re-exacerbation of his original injury of 1975. * * * It is my considered opinion that Mr. Ole Larson is now suffering, and has suffered from, exacerbation directly related to his work and related to his original injury of 1975."

Taken together with the claimant's history and his course of treatment under Dr. Miller, we find this opinion persuasive.

The order of the Board is reversed and remanded with instructions to reinstate the referee's order.